

ORIGINAL

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

FILED

NORTHERN DISTRICT OF TEXAS

MAY 1 7 2004

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| RFR INDUSTRIES, INC. | § | |
| | § | |
| Plaintiff | § | |
| VS. | § | **CIVIL ACTION NO. 3-02 CV 1444 K** |
| | § | |
| REX-HIDE INDUSTRIES, INC. | § | |
| | § | |
| Defendant | § | |
| and Third-Party Plaintiff. | § | |
| VS. | § | |
| | § | |
| CENTURY STEPS, INC., | § | |
| d/b/a CENTURY PRECAST | § | |
| | § | **JURY DEMANDED** |
| Third-Party Defendant | § | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF REX-HIDE INDUSTRIES, INC.'S**
**MOTION FOR SUMMARY JUDGMENT ON LIABILITY(FED.R.CIV.P. 56)**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW Rex-Hide Industries, Inc., Defendant and Third-Party Plaintiff in the above

styled and numbered cause and files this Memorandum of Points and Authorities in Support of Rex-

Hide Industries, Inc.'s Motion for Summary Judgment. Rex-Hide's Motion for Summary Judgment

is being filed contemporaneously with this Memorandum.

ORIGINAL

## TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    ARGUMENT:  REX-HIDE IS ENTITLED TO SUMMARY JUDGMENT AS A
        MATTER OF LAW BASED UPON CIRCULAR INDEMNITY . . . . . . . . . . . 6

        A.      Rex-Hide is entitled to statutory indemnity against Century pursuant to Texas
                Business and Commerce Code § 2.312 (c) . . . . . . . . . . . . . . . . . . . . . . . . 6

                1.      Century furnished the railway flangeway filler specifications to Rex-
                        Hide and thereby warranted the railway flangeway filler would be
                        produced free of any claim for infringement . . . . . . . . . . . . . . . . 10

        B.      Rex-Hide is also entitled to contractual indemnity as a matter of law from
                Century. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        C.      Circular indemnity is created under the terms of RFR's prior settlement
                agreement with Century. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        D.      Century has received full satisfaction for the alleged infringement in this case.
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                1.      RFR received past infringement damages in its settlement agreement
                        with Century. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                2.      RFR's present patent infringement lawsuit seeks damages for the
                        same sales period covered by the settlement agreement with Century.
                        No additional damages are available. . . . . . . . . . . . . . . . . . . . . . . 14

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

Cases                                                                                    Page

*Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964) . . . . . . . . . 13

*Bonneau v. AG Industries, Inc.*, 116 F.3d 155 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 6,8,9

*Cover v. Hydramatic Packing Co.*, 83 F.3d 1390 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . *Passim*

*Cover v. Hydramatic Packing Co.*, 43 U.S.P.Q.2d 1305 (E.D.Pa. 1997) . . . . . . . . . . . . . . . . . . 8

*Johnson Electric North America Inc. v. Mabuchi Motor America Corp.*,
     98 F.Supp.2d 480 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Panhandle Gravel Co. v. Wilson*, 248 S.W. 2d 779 (Tex. Civ. App. -- Amarillo 1952,
     writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Phillips Pipe Line Co. v. McKown*, 580 S.W.2d 435 (Tex. Civ. App. -- Tyler 1979,
     writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Richardson v. Mother Blues, Inc.* 624 S.W. 2d 623 (Tex. Civ. App.-- Houston [14th Dist] 1981,
     no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Starcraft Co. v. C.J. Heck Co. of Texas, Inc.*, 748 F.2d 982 (5th Cir. 1984) . . . . . . . . . . . . . . . 12

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971) . . . . . . . . . . . . . . . . . . . . 13

Federal Statutes

35 U.S.C. § 287(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

UCC § 2-312(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8

State Statutes

Pennsylvania Uniform Commercial Code § 2-312(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Texas Business and Commerce Code § 2.312(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

## I. INTRODUCTION

This is a classic case of circular indemnity.  Specifically, Defendant and Third-Party Plaintiff Rex-Hide Industries, Inc. ("Rex-Hide") seeks indemnification from Century Steps Inc., d/b/a Century Precast ("Century") for the costs and legal expenses incurred in defending against a patent infringement suit brought by RFR Industries, Inc. ("RFR").  Rex-Hide is a custom rubber extruder and manufactured the allegedly infringing gauge-side railway flangeway filler according to drawings and specifications provided by Century.

Rex-Hide is entitled to indemnity under the Texas Business and Commerce Code § 2.312(c) for complying with the specifications furnished by Century.  Further, Rex-Hide is entitled to contractual indemnity pursuant to the terms of Rex-Hide's sales agreement with Century.

Third-Party Defendant Century is entitled to indemnification against RFR under the terms of a settlement agreement in prior litigation by RFR over the same allegedly infringing products manufactured by Rex-Hide.  Accordingly, there is circular indemnity between all parties, and RFR's causes of action are barred as a matter of law.

Additionally, Rex-Hide is entitled to summary judgment as a matter of law because RFR received full satisfaction for the alleged past infringement from its prior settlement with Century.

## II. STATEMENT OF FACTS

This lawsuit is an offspring from a former action brought by RFR against Century.  RFR originally asserted the former action on January 18, 1998.[1]  This Complaint alleged Century infringed RFR's patents for gauge-side flangeway filler, which patents issued in 1996.

---

[1]*See* RFR's Original Complaint attached hereto as Appendix A at p1.

Century and RFR do not manufacture the products themselves; instead, they both provide drawings and specifications to Rex-Hide. [2]  Thereafter, Rex-Hide manufactures the flangeway filler according to Century's and RFR's respective drawings and specifications. [3]  Rex-Hide is a custom extruder of rubber products and manufactures products to a customer's specifications.[4]  Rex-Hide has been manufacturing the flangeway fillers for both RFR and Century since at least 1993.[5]

Noteworthy, RFR has never instructed Rex-Hide to stop manufacturing the flangeway filler at issue for Century.[6]  In fact, RFR expressly agreed to allow Rex-Hide to continue as Century's and RFR's manufacturer of flangeway fillers as part of the settlement of the lawsuit between RFR and Century.[7]  In addition to allowing Century through RFR to place flangeway filler orders to be manufactured by Rex-Hide, Century also paid RFR a monetary settlement of $1,000,000.00 for the alleged past infringement by Century. [8]  In July of 2002, over two years after RFR settled its lawsuit with Century and almost six years after its patents issued, RFR brought this action against Rex-Hide for its manufacturing of flangeway fillers for Century.  The total gross revenues of Rex-Hide for the gauge-side flangeway fillers to Century from 7/16/96 (patent issuance date) through February 21, 2000 (consent date for Rex-Hide to continue manufacturing for Century/RFR) were only

---

[2]*See* Affidavit of Tom Wilson attached hereto as Appendix B at p26.

[3]*Id.*

[4]*Id.*

[5]*Id.*

[6]*Id.*

[7] *See* Appendix C at p.53, Appendix D at p 55 , and Appendix E at p 56.

[8] *See* Settlement Agreement attached hereto as Appendix F (being filed under seal) at p59.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REX-HIDE INDUSTRIES, INC.'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY (FED.R.CIV.P. 56)                                                                                     PAGE 5

$713,914.00. [9]

As discussed below, this is a case in which circular indemnity exists as a matter of law. Further, there are no damages as a matter of law since Century's monetary settlement far exceeded any allowable recovery of alleged damages against Rex-Hide.

## III.   ARGUMENT

### REX-HIDE IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW BASED UPON CIRCULAR INDEMNITY

A.     **Rex-Hide is Entitled to statutory indemnity against Century pursuant to Texas Business and Commerce Code § 2.312(c) .**

The Texas Business and Commerce Code, § 2.312(c), states in relevant part that "a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of the compliance with the specifications."   This statute shifts all costs, including attorneys' fees, to the buyer who furnishes a seller with specifications that lead to a claim of patent infringement. *See, Bonneau v. AG Industries, Inc.*, 116 F.3d 155, 158-59 (5th Cir. 1997); *Cover v. Hydramatic Packing Co.*, 83 F.3d 1390, 1394 (Fed. Cir. 1996); *Johnson Electric North America Inc. v. Mabuchi Motor America Corp.*, 98 F.Supp.2d 480, 489 (S.D.N.Y. 2000). As comment 3 to the § 2.312(c) recognizes:

> When the goods are part of the sellers normal stock and are sold in his normal course of business, it is his duty to see that no claim of infringement of a patent or trademark by a third party will mar the buyers' title.  A sale by a person other than a dealer, however, raises no implication in its circumstances of such a warranty. *Nor is there such an implication when the buyer orders goods to be assembled, prepared or manufactured to his own specifications.  If, in such a case, the resulting product infringes a patent or trademark, the liability will run from buyer to seller.  There is, under such circumstances, a tacit representation on the part of the buyer that the*

<hr>

[9]See Appendix B at p 27.

*seller will be safe in manufacturing according to the specifications, and the buyer is under an obligation in good faith to indemnify him for any loss suffered* (emphasis added).

Rex-Hide manufactured flangeway filler according to Century's design and specification and at Century's express direction. [10] RFR filed a lawsuit against Rex-Hide for patent infringement. Rex-Hide has incurred attorneys' fees and costs defending against that lawsuit. Section 2.312(c) requires Century to reimburse Rex-Hide for these costs and fees.

The cases interpreting UCC § 2.312(c) support Rex-Hide's indemnity claim against Century. The leading case is *Cover v. Hydramatic Packing Co.*, 83 F.3d 1390 (Fed. Cir. 1996), a 1996 decision by the Federal Circuit.

*Hydramatic* involved facts similar to our present situation. The plaintiff, Cover, held a patent for a lighting fixture system that included a batt of thermal insulation to protect the wiring from heat produced by a bulb. Hydramatic manufactured insulation products based upon the specifications of its customers. Sea Gull, a lighting fixture manufacturer, produced certain lighting fixtures that incorporated multi-layered batts of insulation.

In July of 1998, Hydramatic began manufacturing multi-layered batts of insulation according to Sea Gull's drawings and specifications. Sea Gull then incorporated this insulation into its products. In December of 1993, Cover sued Sea Gull for direct infringement and Hydramatic for contributory infringement of its patent. Hydramatic filed a counterclaim challenging the patent's validity. Hydramatic also filed a cross-claim against Sea Gull for indemnification under § 2-312(c)

---

[10]This is admitted in Century's original answer to Rex-Hide's Third-Party Complaint attached as Appendix G at p 82. It is further admitted by Century in the affidavit of Chris Gaudet attached hereto as Appendix C at p 52.

of the Pennsylvania Uniform Commercial Code.[11]

Cover settled with Sea Gull for $75,000 before trial and dismissed the case between them with prejudice.  Cover then settled with Hydramatic for $175,000, plus dismissal of Hydramatic's counterclaim.  As a result of these settlement agreements, only Hydramatic's cross-claim against Sea Gull for indemnification remained for trial.

The trial court dismissed Hydramatic's indemnification claim on the grounds that 35 U.S.C. § 287(a) of the patent code preempted application of § 2-312(c) of the state commercial code.  The Federal Circuit reversed on appeal, holding that federal law does not preempt application of the Uniform Commercial Code's provision regarding indemnification:

> At issue, therefore, is the legal relationship between two contracting parties, and it is § 2312(c) which defines this relationship.  On its face, § 2312(c) shifts all costs, including attorney fees, to the buyer who furnishes a seller with specifications that leads to a "rightful claim" of infringement.  This state law, unlike the state laws in previous patent pre-emption cases, does not purport to provide exclusive property rights to "creations which would otherwise remain unprotected under federal law." In short, we cannot discern any conflict between §§ 287(a) and 2312(c).

*Cover, supra*, 83 F.3d at 1394.

The Federal Circuit then remanded the matter back to the trial court for a trial on Hydramatic's indemnification claim.  On remand, the trial court entered judgment for Hydramatic in the amount of $275,000.  This amount consisted of Hydramatic's $175,000 settlement with Cover, plus an additional $100,000 for Hydramatic's costs and attorneys' fees.[12]

Following *Hydramatic*, the Fifth Circuit reached a similar decision in *Bonneau*, 116 F.3d at

---

[11]Section 2-312(c) of the Pennsylvania Uniform Commercial Code is identical to §2.312(c) of the Texas Business and Commerce Code.

[12]*Cover v. Hydramatic Packing Co.*, 43 U.S.P.Q.2d 1305 (E.D.Pa. 1997).

158-59.   Bonneau manufactures and distributes non-prescription reading glasses.  These glasses were sold from a point-of-purchase display stand via a "hang-tag" system.  The hang-tag enables a prospective purchaser to observe, test, and purchase a wide array of reading glasses without interference from the hang-tag itself.  The hang-tag is hung from a cantilever support (two metal support arms) that projects outward from the display stand on which the hang-tag is suspended (known as the Bonneau "Slide-Hook" system).

In December 1992, AGI and Bonneau entered into a supply agreement whereby AGI agreed to manufacture and sell display stands to Bonneau.  AGI, at the direction of Bonneau, manufactured the display stand, hang-tag, and cantilever arms which comprise the Bonneau Slide-Hook display system.  Subsequently, Magnavision sued Bonneau, contending that the hang-tag system used by Bonneau infringed Magnavision's patent.

In December of 1993, Bonneau filed suit against AGI.  Bonneau sued under Texas Business & Commerce Code § 2.312(c) for breach of warranty, alleging that AGI designed the hang-tag system and thereby warranted it was free of any rightful claim of infringement.  AGI counterclaimed, alleging that Bonneau supplied the specifications for the hang-tag system and thereby warranted the system did not infringe upon Magnavision's patent.

The primary issue before the court was whether Bonneau had furnished "specifications" to AGI.  The court concluded that Bonneau's design "contain[ed] sufficient specificity for a competent manufacturer to construct the product, and thus constitut[ed] a "specification" pursuant to § 2.312(c)." *Bonneau*, 116 F.3d at 158.  The court went on to state:

> Moreover, as Comment 3 to § 2.312(c) recognizes "when the buyer orders goods to be assembled, prepared or manufactured [based] on his own specifications...liability will run from buyer to seller." TEX. BUS. & COM. CODE § 2.312 cmt. 3 (1994).

... Thus, it would be erroneous for this Court to conclude that Bonneau did not furnish the specifications for the Slide-Hook because such a conclusion would nullify the import of § 2.312(c), and allow buyers to avoid liability by simply employing another party to build the specific product and subsequently assert that because the other party constructed the product, the buyer must always be indemnified. We do not envision that the Texas Supreme Court would so hold and, likewise, we decline to do so.

*Id.* at 158-159.

Finally, the Fifth Circuit agreed with the determination in *Hydramatic* :

Finally, we note that the Federal Circuit in interpreting the Pennsylvania counterpart to § 2.312(c) of the Texas U.C.C., concluded that "on its face [§ 2.312(c)] shifts all costs, including attorney fees, to the buyer who furnishes a seller with specifications that leads to a "'rightful claim' of infringement." *Cover v. Hydramatic Packing Co., Inc.*, 83 F.3d 1390, 1394 (Fed.Cir. 1996). We agree with this reading of the statute."

*Id.,* 116 F.3d at 159.

> **1. Century furnished the railway flangeway filler specifications to Rex-Hide and thereby warranted the railway flangeway filler would be produced free of any claim for infringement.**

It is undisputed that Century furnished Rex-Hide with the design, including detailed specifications and drawings, for manufacturing the railway flangeway filler.[13] The sales contracts between the parties required Rex-Hide to manufacture the railway flangeway filler according to the specifications provided by Century.[14] The affidavit of Chris Gaudet, a current employee of Century, unequivocally demonstrates that Rex-Hide manufactured the flangeway filler according to specifications furnished by Century and that Rex-Hide provided no input in the design of the

---

[13]This is admitted in Century's Answer at Appendix G, p 82 and by Century's corporate representative at Appendix C, p 52.

[14]See Appendix B at pp. 28-51.

flangeway filler.[15]

Based on the foregoing, Rex-Hide is entitled to indemnity from Century as a matter of law pursuant to Texas Business & Commerce Code § 2.312 (c).

**B.      Rex-Hide is also entitled to contractual indemnity as a matter of law from Century**

In addition to the statutory indemnity Century owes Rex-Hide, Century has contractual indemnity owing to Rex-Hide.  Specifically, each of Rex-Hide's contracts with Century provide:

PATENTS

In the event any of the parts produced under this contract infringe or are claimed to infringe any patent, copyright, or trademark, you agree to indemnify and save us harmless from any and all damages, losses or expenses, direct or indirect, to which we may be subjected on that account including but not limited to losses resulting from judgments, attorneys fees, or settlements with or without your consent.[16]

Accordingly, Rex-Hide is entitled to not only statutory indemnity, but also contractual indemnity as a matter of law from Century.

**C.      Circular indemnity is created under the terms of RFR's prior settlement agreement with Century**

The Settlement Agreement from March of 2000 between RFR and Century completes the circular indemnity, requiring dismissal of RFR's claim against Rex-Hide as a matter of law. Specifically,  paragraph 8.3 of the Settlement Agreement provides:

8.3      RFR agrees to indemnify and hold harmless Century, and all current and former Century officers, directors, employees, agents, shareholders, trustees, partners, attorneys, or representatives, from any claim made against Century or any Century current or former officers, directors, employees, agents, shareholders, trustees, partners, attorneys, or representatives by any Century

---

[15]See Chris Gaudet Affidavit attached hereto as Appendix C at p 52.

[16]See Rex-Hide Contracts attached hereto as Appendix B at pp 28 - 51.

Extruder as a result of any RFR claim against any Century Extruder.[17]

The very same page defines Rex-Hide as a "Century Extruder."[18]

The Settlement Agreement between RFR and Century further provides that it "shall be construed, interpreted and enforced in accordance with the laws of the State of Texas . . . ."[19] RFR has not contended that the Settlement Agreement is ambiguous.[20] Therefore, the intention of the parties must be determined from the language of the agreement. See *Richardson v. Mother Blues, Inc.,* 624 S.W. 2d 623, 625 (Tex. Civ. App.-- Houston [14th Dist] 1981, no writ). In the case at bar, Rex-Hide, a "Century Extruder," is bringing a claim against Century directly as a result of RFR's claim against Rex-Hide. Accordingly, RFR owes Century indemnity pursuant to § 8.3 of the Settlement Agreement.

Based on the foregoing, dismissal of all RFR's claims and causes of action is required as a matter of law to avoid useless circuity of action among these parties. See *Panhandle Gravel Co. v. Wilson*, 248 S.W. 2d 779, 784-85 (Tex. Civ. App. -- Amarillo 1952, writ ref'd n.r.e.); see also *Starcraft Co. v. C.J. Heck Co. of Texas, Inc.,* 748 F.2d 982, 990-992 (5th Cir. 1984) (Plaintiff Starcraft's claims were extinguished as a matter of law because of circuity of action); and *Phillips Pipe Line Co. v. McKown*, 580 S.W.2d 435, 439-440 (Tex. Civ. App. -- Tyler 1979, writ ref'd n.r.e.) (Circuity of action required dismissal of plaintiffs' claims even though plaintiffs stipulated in their

---

[17]See Appendix F (being filed under seal) at p 65.

[18]*Id.*

[19]See Appendix F (being filed under seal) at p 69.

[20]See RFR's Amended Answer attached as Appendix H at p 88.

release with third-party defendant that they were reserving their right to sue the defendant).

**D. Century has received full satisfaction for the alleged infringement in this case.**

The United States Supreme Court in *Aro Manufacturing Co. v. Convertible Top Replacement Co., Inc.*, 377 U.S. 476 (1964), clearly established the rule that a plaintiff is entitled to only one recovery for the same allegedly infringing activity:

> Payments made by one tortfeasor on account of a harm for which he and another are each liable, diminish the amount of the claim against the other whether or not it was so agreed at the time of payment and whether the payment was made before or after judgment.

*Aro*, 377 U.S. at 503 (citations omitted).

Following *Aro*, the United States Supreme Court in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 346 (1971), considered the effect of a release on a plaintiff's recovery of past and future damages:

> It is settled that entirely apart from any release, a plaintiff who has recovered any item of damage from one coconspirator may not again recover the same item from another coconspirator; the law, that is, does not permit a plaintiff to recover double payment.

*Zenith*, 401 U.S. at 348 (citations omitted).

Like the parties in *Zenith Radio*, the undisputed facts demonstrate that under its settlement agreement with Century, RFR was compensated for damages up to the date of the release.[21] Thus, RFR has received damages for past infringement and no future damages are available.

---

[21]See Settlement Agreement attached as Appendix F (being filed under seal) at p 57-69.

1.    **RFR received past infringement damages in its settlement agreement with Century.**

Since the time of RFR's settlement agreement with Century, Rex-Hide has manufactured Century's flangeway filler product with RFR's express permission.[22] Since February 2000, RFR has directly placed orders for Century's products with Rex-Hide and resold those products to Century.[23] RFR's infringement damages in this case must necessarily be limited to RFR's alleged damages prior to February 2000.   As discussed below, RFR received compensation for all past infringement damages in its settlement with Century in March 2000.  No future damages are available.

2.    **RFR's present patent infringement lawsuit seeks damages for the same sales period covered by the settlement agreement with Century.  No additional damages are  available**

Century's monetary settlement with RFR far exceeded Rex-Hide's total sales of the allegedly infringing product.  Specifically, the total amount of sales revenue Rex-Hide received from manufacturing "pop-down" gauge-side flangeway filler for Century was only $713,194.[24]  RFR received a monetary settlement of $1,000,000 under Section III of the RFR/Century Settlement Agreement alone.[25]  Accordingly, RFR's settlement with Century for past infringement damages exceeds Rex-Hide's total sales revenue for the allegedly infringing product.  RFR has received full satisfaction and in fact has been over compensated for the allegedly infringing activity by Century and Rex-Hide in this case.  Rex-Hide is further entitled to summary judgment is a matter of law since

---

[22]See Appendix C at p 53, Appendix D at p 55, and Appendix E at p 56.

[23]*Id.*

[24]*Id.* See Affidavit of Tom Wilson attached hereto as Appendix B at p 27.

[25]See Appendix F (being filed under seal) at p 59.

RFR has no damages.

## IV.   CONCLUSION

For the reasons stated above, Rex-Hide asks the Court to grant Rex-Hide's motion for summary judgment, enter a judgment that Plaintiff take nothing, dismiss Plaintiff's suit with prejudice, assess costs and reasonable attorneys fees against the Plaintiff, and award Rex-Hide all other relief to which it is entitled.

Dated: May 14, 2004

Respectfully submitted,

HOEFFNER & BILEK, L.L.P.

_____

Thomas E. Bilek
State Bar No. 02313525
Debra B. Norris
State Bar No. 24010269
720 Lyric Office Centre
440 Louisiana Street
Houston, Texas 77002
(713)227-7720 telephone
(713)227-9404 facsimile

**ATTORNEY FOR DEFENDANT
REX-HIDE INDUSTRIES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished in accordance with the Federal Rules of Civil Procedure via certified mail, return receipt requested to all known counsel of record, this 14th day of May, 2004, properly addressed as follows:

John R. Emerson                          Robert G. Oake, Jr.
Haynes and Boone, L.L.P.                 Law Offices of Robert G. Oake, Jr.
901 Main Street, Suite 3100              101 W. McDermott, Suite 109
Dallas, TX 75202                         Allen, Texas 75013


_____
Thomas E. Bilek